<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

———————————————————————— :
LEROY SMITH, JR.,                                    :
                                                     :
                                   Plaintiff,        :
                                                     :        Civ. Action No. 16-0927-BRM-LHG
                       v.                            :
                                                     :
MICHAEL RODRIGUEZ, et al.,                           :        **OPINION**
                                                     :
                                   Defendants.       :
———————————————————————— :

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are twelve (12) Motions to Dismiss (ECF Nos. 11, 26 to 36) *pro se*
Plaintiff Leroy Smith, Jr.'s ("Plaintiff") Complaint (ECF No. 1), pursuant to Fed. R. Civ. P.
12(b)(6) and 12(c). Plaintiff has not opposed these Motions, but has instead moved to recuse the
undersigned from the case. (ECF No. 48.) For the reasons set forth herein, the Motion to Recuse
is **DENIED** and the Motions to Dismiss are **GRANTED**.

**I.   BACKGROUND[1]**

   **A.  Factual Background**

Plaintiff brings claims for fraud under New Jersey law and violations of his constitutional
rights under 42 U.S.C. § 1983, including selective enforcement, false arrest, and denial of medical

———————————————————

[1] For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the
Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v.
Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). However, Plaintiff's 51-page handwritten
Complaint is largely unintelligible. As such, having construed the pleadings liberally, the
following is a summary of those facts the Court was able to glean from the Complaint. *See Erickson*

treatment, against the following Defendants: Michael Rodriguez ("Rodriguez"), individually and in his capacity as a Borough of Lakehurst, N.J. ("Lakehurst") police officer; the Lakehurst Police Department (the "Lakehurst PD"); Lisa Fisher ("Fisher"), individually and in her capacity as a Lakehurst court administrator; Harry Robbins ("Robbins"), individually and in his "illegal" capacity as Mayor of Lakehurst; Brian Baranyay ("Baranyay"), individually and in his capacity as a Lakehurst police officer; Ronald Heinzman ("Heinzman"), individually and in his capacity as a Lakehurst police officer; Iain James ("James"), individually and in his capacity as a Lakehurst police officer; Eric Higgins, individually and in his capacity as Lakehurst Police Chief; Terri Higgins, wife of Eric Higgins, individually and in her capacity as "U.S. Postal Mail"; James Davis ("Davis") individually and in his "illegal" capacity as Lakehurst Council President; Patricia Borsetti ("Borsetti"), individually and in her capacity as a Lakehurst deputy court administrator; Judge Daniel F. Sahin ("Judge Sahin"), individually and in his capacity as a Manchester Township, N.J. ("Manchester") and Jackson, N.J. Judge; Manchester; Aaron Bail Bonds; Judge Foster, individually and in his capacity as an Ocean County and Toms River, N.J. Judge, the Ocean County Jail; the Manchester Tax Collector Office; Joseph DePasquale ("DePasquale"); Stephen Gallo ("Gallo"); Marie Bell ("Bell"), the Ocean County Sheriff's Department; the State of N.J. Superior/Municipal Court; Boro Councilmen and Councilwomen; and various John Doe defendants ("John Doe Defendants") (collectively, "Defendants").[2]

---

v. *Pardus*, 551 U.S. 89, 93-94 (2007) (The pleadings of *pro se* plaintiffs should be "liberally construed.").

[2] A number of Defendants have not been served, including Sahin, Aaron Bail Bonds, Judge Foster, the Ocean County Jail, Depasquale, Gallo, the Ocean County Sheriff's Department, the State of N.J. Superior/Municipal Court, and Boro Councilmen and Councilwomen ("Unserved Defendants"). On March 11, 2016, the Court ordered Plaintiff to file proof of service on Unserved Defendants by March 25, 2016. (ECF No. 7.) Plaintiff failed to do so. Accordingly, on February 9, 2017, the Court filed a Notice of Call for Dismissal of Unserved Defendants, pursuant to Fed.

According to the Complaint, Plaintiff ran against Robbins for the office of Mayor of Lakehurst in 2007. (ECF No. 1 at 3-4.) Plaintiff alleges Robbins "illegally" won this mayoral race, through "fraud and conspiracy, concealment(s), misrepresentation" and failed to take the mayoral oath of office in 2011. (*Id.* at 3-5.) Plaintiff claims the Ocean County Jail, the Ocean County Sheriff's Department, Fisher, Judge Sahin, Judge Foster, and State Judge Vincent Grasso "help[ed] keep [Plaintiff] out of the 2007 Mayor [of Lakehurst] race." (*Id.* at 6, 39.) Plaintiff further claims Davis "enter[ed] into what [Plaintiff] feel[s are] acts(s) of fraud, concealment, [and] deprivation of civil rights against the only person that ran for Mayor [of Lakehurst] receiving vote(s)[,] the Plaintiff." (*Id.* at 7.) Plaintiff alleges Davis and Robbins have had "[Lakehurst] police[,] including the [Lakehurst] Police Chief Eric Higgins[,] coming to their home(s) regularly dropping off large envelope(s)." (*Id.* at 10.) Additionally, Plaintiff alleges Robbins improperly remained Lakehurst Council President while running for Mayor in 2007, rather than resigning from the position. (*Id.* at 4.) Plaintiff asserts numerous Defendants knew, or should have known, of Robbins's fraud. (*See generally id.*)

Since the 2007 election, Plaintiff alleges he has been harassed by Lakehurst police officers, because he is of African American and Native American descent and in retaliation for expressing his intentions to file this action. (*Id.* at 3-4) Specifically, Plaintiff alleges Lakehurst police officers have "yearly" issued him "ticket(s)/summon(s)" and he has had to "use all [his] money(s) trying to not be ran out of [Lakehurst] and being jailed." (*Id.* at 4.) Plaintiff asserts Eric Higgins encouraged Lakehurst police officers to give "ticket(s)/summon(s)" to Plaintiff to "try and stop [Plaintiff] [from] com[ing] before the court(s)." (*Id.* at 8.) Rodriguez allegedly selectively enforced

_____

R. Civ. P. 4(m). (ECF No. 47.) On February 23, 2017 the Court dismissed Unserved Defendants without prejudice and without costs, pursuant to Rule 4(m). (ECF No. 49.)

laws against Plaintiff, racially profiled Plaintiff, and wrongfully arrested Plaintiff. (*Id.* at 23.) Plaintiff also asserts Rodriguez never took the oath of office for his position as a Lakehurst police officer, and therefore is not legally a Lakehurst police officer. (*Id.* at 28.)

Plaintiff further alleges Fisher and Judge Sahin conspired to forge Judge Sahin's signature on a warrant for Plaintiff's arrest, which allowed Fisher to "put $15,000.00 bail against Plaintiff." (*Id.* at 8, 25, 39-40, 44.) The July 20, 2013 warrant, which Plaintiff attaches to the Complaint, calls for Plaintiff's arrest for "knowingly flee[ing] or attempt[ing] to elude officer Rodriquez [sic], a law enforcement officer, after having received a signal from this officer to bring the vehicle to a full stop . . . in violation of N.J.S. 2C:29-2B" and for "purposely obstruct[ing] the administration of law . . . by refusing to provide identification and documentation to officer Rodriguez while during a motor vehicle stop and leaving the scene of the stop in his vehicle, in violation of N.J.S. 2C:29-1B." (ECF No. 1-3 at 4.) However, in direct contradiction to Plaintiff's allegations, the warrant does not contain Judge Sahin's signature. (*Id.*) Instead, Judge Sahin's name, not his signature, is listed in the portion of the warrant stating which judicial officer set Plaintiff's bail amount at $15,000. (*Id.*) The portion of the warrant actually finding probable cause and authorizing Plaintiff's arrest is signed by Fisher, in her capacity as a court administrator. (*Id.*) Plaintiff does not allege Fisher's own signature was forged. Nor does Plaintiff identify the officer who ultimately executed the warrant against Plaintiff, or allege he was ever arrested pursuant to the warrant.

Plaintiff also claims to have, at some point, driven to the Manchester police station to request "protection(s)" from Lakehurst police officers. (ECF No. 1 at 25.) At the Manchester police station, Plaintiff allegedly experienced a medical crisis and "had to beg the [Lakehurst] and Manchester . . . police for medical treatment/assistant at gun point to his head." (*Id.* at 25.) Lakehurst police then allegedly arrested Plaintiff and kept him in the Ocean County Jail for three

(3) days without adequately treating Plaintiff's blood pressure or providing him with his prescription pain medication. (*Id.* at 6, 25.)

Plaintiff further claims Ocean County Probation owes him "$11,000.00 plus interest on over paid child support plus [Plaintiff's] Federal Retirement Funds held in escrow by the Nooin York et als. Firm since September 15, 1987." (*Id.* at 6) Plaintiff finally alleges Aaron Bail Bonds, with which he presumably has a bail bond agreement, "change[d] [their] agreement a number of time(s)." (*Id.* at 5-6.)

### B.  Procedural Background

On October 29, 2015, Plaintiff filed his Complaint in this action. (ECF No. 1.) On March 2, 2016, Rodriguez, Lakehurst, Fisher, Robbins, Baranyay, Heinzman, James, Eric Higgins, Davis, and Borsetti answered the Complaint, and filed crossclaims against all other Defendants for contribution and indemnification, and a counterclaim against Plaintiff for reasonable attorney's fees. (ECF No. 6.) On July 8, 2016, Manchester and the Manchester Tax Collector's Office (collectively, "Manchester Defendants") moved to dismiss the claims against them pursuant to Rules 12(b)(6) and 12(c). (ECF No. 11.) Plaintiff did not oppose or otherwise respond to Manchester Defendants' Motion.

On August 9, 2016, this matter was reassigned to the undersigned. (ECF No. 14.) On September 16, 2016, at an in-person status conference with Plaintiff and Defendants' counsel, the Court ordered Plaintiff to respond to Manchester Defendants' Motion to Dismiss by October 7, 2016 and ordered Rodriguez, Lakehurst, Fisher, Robbins, Baranyay, Heinzman, James, Eric Higgins, Davis, Borsetti, Bell, and Terri Higgins (collectively, "Lakehurst Defendants") (together with Manchester Defendants, "Moving Defendants") to file any dispositive motions by October 7, 2016. (ECF No. 24.) On October 7, 2016, Lakehurst Defendants filed eleven (11) substantially

identical Motions to Dismiss the claims against them, pursuant to Rules 12(b)(6) and 12(c). (ECF Nos. 26 to 36.) Plaintiff did not respond to Manchester Defendants' Motion to Dismiss by the October 7, 2016 deadline, but instead requested an extension of the deadline for medical reasons. (ECF No. 37.)

The Court ordered Plaintiff, by November 21, 2016, to either (1) oppose the pending Motions to Dismiss or (2) file an additional letter explaining why his health condition necessitates further adjournment, including a proposed briefing schedule and attaching a sworn certification from his treating physician regarding the details of his health status. (ECF No. 38.) Rather than timely respond to the Motions, on November 25, 2016, Plaintiff requested an indefinite extension for medical reasons, but did not explain how his health condition would prevent him from submitting written opposition papers. (ECF No. 41.) The Court again extended Plaintiff's deadline to respond to the pending Motions to Dismiss to December 12, 2016, and advised Plaintiff the Court would consider the Motions unopposed if he failed to respond to the Motions by that date. (ECF No. 44.) To date, Plaintiff has not opposed or otherwise responded to the pending Motions to Dismiss. Accordingly, the Court considers the Motions to Dismiss unopposed.[3]

On February 9, 2017, the Court filed a Notice of Call for Dismissal of Unserved Defendants, pursuant to Fed. R. Civ. P. 4(m). (ECF No. 47.) In response, on February 13, 2017,

---

[3] "A district court may grant an uncontested motion without a merits analysis (*i.e.,* based solely on its uncontested nature) only in certain limited circumstances, such as 'where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney,' or when a party fails to follow specific direction from the court." *Jenkins v. Young*, Civ. No. 13-2466 (ES), 2014 U.S. Dist. LEXIS 176983, at *15 n.4 (D.N.J. Dec. 23, 2014) (quoting *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)); *see also Brown v. Diguglielmo*, 418 F. App'x 99, 101 (3d Cir. 2011). Here, Plaintiff has failed to follow the specific direction of the Court to respond to the pending Motions to Dismiss by December 12, 2016. (*See* ECF No. 44.) Nonetheless, in light of the fact that Plaintiff is appearing *pro se*, and in an abundance of caution, the Court will analyze the pending Motions to Dismiss on their merits.

Plaintiff filed a Motion to Recuse the undersigned, pursuant to 28 U.S.C. § 455, for failure to remain impartial. (ECF No. 48.) Defendants have not responded to Plaintiff's Motion to Recuse. On February 23, 2017, the Court dismissed Unserved Defendants without prejudice and without costs, pursuant to Rule 4(m). (ECF No. 49.)

## II. MOTION TO RECUSE

### A. Legal Standard

Pursuant to 28 U.S.C. § 455(a), a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The test for such recusal is whether a reasonable person who is aware of all of the facts might reasonably question a judge's impartiality." *In re Whitchurch*, 639 F. App'x 772, 774 (3d Cir. 2016) (citing *In re Kensington Int'l, Ltd.*, 368 F.3d 289, 301-02 (3d Cir. 2004)). "Section 455(b) sets forth specific circumstances for recusal, including where a judge has 'a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.'" *In re Whitchurch*, 639 F. App'x at 774 (quoting 28 U.S.C. § 455(b)(1)).

"Generally, beliefs or opinions which merit recusal must involve an extrajudicial factor," *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) (quotations omitted), and "judicial rulings alone almost never constitute a valid basis" for recusal, *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judicial decisions "can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." *United States v. Wecht*, 484 F.3d 194, 218 (3d Cir. 2007) (quoting *Liteky*, 510 U.S. at 555). Moreover, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless

7

they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

### B.  Decision

Plaintiff asserts recusal of the undersigned is warranted under 28 U.S.C. § 455(a) and (b)(1) "because [the undersigned] apparently belong[s] to the club" and therefore is "trying [to] cover . . . up" Defendants' alleged wrongdoing. (ECF No. 48 at 2.) However, Plaintiff's allegations of bias lack any merit or support in the record. Plaintiff provides no explanation of what "club" the undersigned allegedly belongs to, or why the undersigned's membership in said "club" would affect the undersigned's impartiality in this case. Moreover, Plaintiff points to no action taken by the undersigned, or indeed any facts, that would lead a reasonable person to question the undersigned's impartiality. To the contrary, the record shows the Court has extended every possible accommodation to Plaintiff in an attempt to provide him with an opportunity to oppose the pending Motions to Dismiss on the merits. (*See* ECF Nos. 24, 38, 44.)

Additionally, insofar as Plaintiff's Motion is based on the Court's issuance of a Notice of Call for Dismissal of Unserved Defendants, pursuant to Fed. R. Civ. P. 4(m), this Notice is not grounds for recusal. The Third Circuit has "repeatedly stated that a party's displeasure with legal rulings does not form an adequate basis for recusal." S*ecuracomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 278 (3d Cir. 2000). The Court provided Plaintiff with a more than reasonable amount of time to serve Unserved Defendants. Rule 4(m) dictates "[i]f a defendant is not served within *90 days* after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . . ." Fed. R. Civ. P. 4(m) (emphasis added). Plaintiff had over 15 months to serve these Defendants, from November 17, 2015, the date the summons in this matter issued, to February 23, 2017, the date Unserved

Defendants were dismissed. (*See* ECF Nos. 4, 49.) The Court's issuance of a Notice of Call for Dismissal, and ultimate dismissal of Unserved Defendants pursuant to Rule 4(m), is not indicative of bias against Plaintiff.

For these reasons, the Court is satisfied that a reasonable person who is aware of all of the facts would not reasonably question the undersigned's impartiality. Moreover, the Court is unaware of any reason why the undersigned would not or could not treat Plaintiff, or any of the parties to this action, in a fair and impartial manner. Accordingly, Plaintiff's Motion to Recuse is **DENIED**.

### III. MOTIONS TO DISMISS

#### A.  Legal Standard

##### i.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). Moreover, where the plaintiff is proceeding *pro se*, the complaint should be "liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93-94.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### ii.   **Rule 12(c)**

Rule 12(c) allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). When a Rule 12(c) motion asserts a plaintiff has failed to state a claim upon which relief can be granted, the court analyzes the motion under the same standard as a Rule 12(b)(6) motion to dismiss. *Bangura v. City of Phila.*,

338 F. App'x 261, 264 (3d Cir. 2009) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). "A motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" *Bangura*, 338 F. App'x at 264 (quoting *Twombly*, 550 U.S. at 555).

### iii.    Rule 9(b)

Additionally, Fed. R. Civ. P. 9(b) "imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To satisfy this heightened pleading standard, a plaintiff must state the circumstances of his alleged cause of action with "sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (*quoting Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)). Specifically, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citing *Lum*, 361 F.3d at 224). The Third Circuit has advised that, at a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting *In re Rockefeller*, 311 F.3d at 216).

### B. Decision

Manchester Defendants argue the claims against them should be dismissed because, among other reasons, "Plaintiff fails to make any allegation against the Manchester Defendants that are 'more than conclusions.'" (Br. on Behalf of Manchester Township in Supp. of Mot. to Dismiss Pl.'s Compl. (ECF No. 11-1) at 6.) Lakehurst Defendants similarly argue the claims against them should be dismissed because, among other reasons, Plaintiff's pleadings are "incomprehensible, baseless and lack the required context . . . for the Court to draw a reasonable inference that any of the defendants are liable under any claim, right or statute." (Lakehurst Defs.' Br. in Supp. of Mot. to Dismiss (ECF No. 26-1) at 14-15.) For the reasons set forth below, the Court agrees Plaintiff has failed to allege any specific facts, beyond purely conclusory allegations, that could form the basis of a plausible claim for relief against any Moving Defendants.

### i. Plaintiff's Claims against the Manchester Tax Collector's Office, Baranyay, Heinzman, James, Borsetti, Bell, Terri Higgins, and Manchester

Plaintiff lists the Manchester Tax Collector's Office, Baranyay, Heinzman, James, Borsetti, Bell, and Terri Higgins as Defendants in the Complaint, but fails to allege any of these Defendants participated in any purported wrongdoing. Plaintiff appears to have brought claims against these Defendants primarily because they "knew or should have known" of other Defendants' alleged fraud and violations of Plaintiff's constitutional rights. (*See generally* ECF No. 1.) However, mere knowledge of another's actions, without some affirmative act on the part of the defendant, is insufficient to state a claim for constitutional violations, pursuant to 42 U.S.C. § 1983, or common law fraud under New Jersey law. *Iqbal*, 556 U.S. at 677 (rejecting theory that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"); *Triffin v. Automatic Data Processing, Inc.*, 394 N.J.

Super. 237, 246 (N.J. App. Div. 2007) (explaining to state a claim for common law fraud under New Jersey law, the plaintiff must allege, among other elements, the defendant made "a material misrepresentation of a presently existing or past fact") (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (N.J. 1997)).

Plaintiff also alleges some sort of incident occurred at the Manchester police station. (ECF No. 1 at 25.) Specifically, Plaintiff claims to have driven to the Manchester police station of his own accord, where he experienced a medical crisis and "had to beg the [Lakehurst] and Manchester . . . police for medical treatment/assistant at gun point to his head." (*Id.*) Plaintiff does not allege it was a Manchester police officer who pointed a gun at his head. Moreover, Plaintiff does not claim to have been arrested by the Manchester police or to be in their custody during his medical crisis. Instead, Plaintiff alleges he was arrested by Lakehurst police officers during his medical crisis and taken to the Ocean County Jail. (*Id.*) Simply put, Plaintiff does not allege the Manchester police officers took any affirmative action, or that the Manchester police officers failed to take an action which they were obligated by law to perform. As such, these allegations are insufficient to state a cognizable claim against Manchester.[4]

Therefore, the claims against the Manchester Tax Collector's Office, Baranyay, Heinzman, James, Borsetti, Bell, Terri Higgins, and Manchester are dismissed without prejudice for failure to state a claim.

---

[4] Plaintiff's § 1983 claims against Manchester also fail, because Plaintiff does not allege a policy, ordinance, or practice of the municipality caused or resulted in alleged constitutional violations by Manchester police officers. *See Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-36 (2010); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Miller v. Brady*, 639 F. App'x 827, 833 (3d Cir. 2016).

ii.     **Plaintiff's Claims against Robbins and Davis**

Plaintiff asserts Robbins illegally defeated Plaintiff in the 2007 Lakehurst mayoral race, by utilizing "fraud and conspiracy, concealment(s), misrepresentation." (ECF No. 1 at 3-5.) Plaintiff further claims Davis, as the Lakehurst Council President, assisted Robbins in "acts(s) of fraud, concealment, [and] deprivation of [Plaintiff's] civil rights." (*Id.* at 7.) However, Plaintiff does not identify what misrepresentations Robbins and Davis allegedly made, or specify what fraudulent actions they allegedly took. Indeed, the only facts pled regarding Robbins and Davis are (1) Lakehurst police officers, including Higgins, regularly deliver large envelopes to Robbins and Davis's houses; (2) Robbins did not take the mayoral oath of office; and (3) Robbins did not resign from his position of Council President while running for Mayor in 2007. (*Id.* at 3-5, 10.) These facts are not sufficient to state a claim against Robbins or Davis for deprivation of Plaintiff's civil rights or common law fraud under New Jersey law.

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) ("Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals."). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). However, Plaintiff does not identify which of his constitutional rights Robbins and Davis violated. Instead, Plaintiff only generally alleges he has been deprived of his civil rights. Even construing the Complaint liberally, the Court cannot conceive of any

constitutional right that may have been violated by Robbins and Davis's acceptance of large envelopes from Lakehurst police officers or Robbins's alleged improper occupation of the office of Mayor of Lakehurst. As such, Plaintiff has failed to state a § 1983 against Robbins or Davis.

To state a claim for fraud under New Jersey law, a plaintiff must allege "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin*, 394 N.J. Super. at 246 (citing *Gennari*, 148 N.J. at 610). Plaintiff only conclusively alleges Robbins and Davis have committed fraud, without alleging any specific facts regarding the elements of this fraud claim. Plaintiff pleads no facts regarding the nature of the alleged misrepresentation; that Robbins and Davis knew the representation was false; that Robbins and Davis intended for Plaintiff to rely on the misrepresentation; that Plaintiff reasonably relied on the representation; or that Plaintiff was injured as a result. As such, Plaintiff has failed to state a claim against Robbins and Davis for fraud, particularly under the heightened pleading standard of Rule 9(b). Accordingly, Plaintiff's § 1983 and fraud claims against Robbins and Davis are dismissed without prejudice for failure to state a claim.

Furthermore, insofar as Plaintiff seeks to contest Robbins's election to the position of Mayor of Lakehurst pursuant to New Jersey State election law, *see* N.J.S.A. 19:29-1, this Court declines to exercise supplemental jurisdiction over these state law claims. Under 28 U.S.C.S. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.S. § 1367(c)(3). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.S. § 1331. In exercising its

discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. Here, because Plaintiff's opposition to Robbins's occupation of the office of Mayor is based purely on state law, it is not a claim over which the Court has original jurisdiction. Therefore, at this early stage in the litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Robbins.

### iii. Plaintiff's Claims against Fisher

Plaintiff does not specifically identify what claims he asserts against Fisher, but liberally construing his Complaint, the Court interprets the pleadings as asserting claims against Fisher under § 1983 for violating Plaintiff's Fourth Amendment rights against unlawful search and seizure. Specifically, Plaintiff alleges Fisher and Judge Sahin conspired to forge Judge Sahin's signature on a warrant for Plaintiff's arrest, which allowed Fisher to "put $15,000.00 bail against Plaintiff." (ECF No. 1 at 8, 25, 39-40, 44.) However, a review of the July 20, 2013 warrant, which Plaintiff attaches to the Complaint, reveals Judge Sahin's signature was not included on the warrant. (ECF No. 1-3 at 4.) Instead, Judge Sahin's name, not his signature, is listed in the portion of the warrant stating which judicial officer set Plaintiff's bail amount at $15,000. (*Id.*) The portion of the warrant finding probable cause and authorizing Plaintiff's arrest is signed by Fisher, in her capacity as a court administrator. (*Id.*) It is not clear from the Complaint if the arrest warrant was ever executed or, if so, who arrested Plaintiff pursuant to the warrant.

Typically, allegations that a search or arrest warrant was forged are sufficient to state a claim under § 1983 for violation of a plaintiff's Fourth Amendment rights against illegal search and seizure. *See El v. Wehling*, Civ. No. 12-7750 (JBS/JS), 2015 U.S. Dist. LEXIS 53356, at *23 (D.N.J. Apr. 23, 2015) (allowing unlawful search and seizure claim to proceed where plaintiff alleged defendants forged warrant under which he was searched and arrested); *Moore v. Dow*, Civ. No. 11-281 (JLL), 2011 U.S. Dist. LEXIS 59679, at *21 (D.N.J. June 2, 2011) (same). The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. Generally, a person is "seized" for the purposes of the Fourth Amendment, when "a police officer accosts an individual and restrains his freedom to walk away." *Couden v. Duffy*, 446 F.3d 483, 494 (3d Cir. 2006) (quoting *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). With some exceptions, a seizure is "reasonable only where it is justified by a warrant or probable cause." *Couden*, 446 F.3d at 494. A forged warrant is a *per se* invalid basis for an arrest. *See El*, 2015 U.S. Dist. LEXIS 53356, at *23; *Moore*, 2011 U.S. Dist. LEXIS 59679, at *21.

In this case, however, the face of the warrant itself contradicts Plaintiff's assertions that the warrant was invalid. The signature Plaintiff asserts was forged, is not the signature authorizing Plaintiff's arrest, and indeed is not a signature at all. Rather, Fisher's signature, in her capacity as a court administrator, finds probable cause and authorizes Plaintiff's arrest pursuant to the warrant. New Jersey Court Rule 7:2-1(d)(1) provides that an arrest warrant "shall be signed by the judge or, when authorized by the judge, by the municipal court administrator or deputy court administrator after a determination of probable cause." N.J. Court Rules, R. 7:2-1(d) (2013).[5]

---

[5] This version of the New Jersey Court Rule 7:2-1(d) was in effect as of July 20, 2013, the date the warrant was issued. It was subsequently amended on November 14, 2016, effective January 1, 2017. *See* N.J. Court Rules, R. 7:2-1(d).

Plaintiff does not allege Fisher was not authorized to sign Plaintiff's arrest warrant herself, or that Fisher's signature was forged. Therefore, Plaintiff has not alleged the issuance of the arrest warrant was invalid. Moreover, the pleadings are unclear as to whether the warrant was ever executed. Although Plaintiff alleges he was arrested by Lakehurst police officers, he does not explain why he was arrested, or clarify if he was arrested pursuant to the warrant. Thus, even if the warrant was invalid, it is not clear that a seizure of Plaintiff's person ever resulted from the issuance of the warrant at issue. As such, Plaintiff has failed to state a claim against Fisher under § 1983 for violation of his Fourth Amendment rights and the is dismissed without prejudice.

### iv.   Plaintiff's Claims against Eric Higgins, Rodriguez, and Lakehurst

Plaintiff alleges, since the 2007 mayoral election, Lakehurst police officers have been harassing him by issuing him tickets and summonses, because he is of African American and Native American descent. (ECF No. 1 at 3-4.) Additionally, Plaintiff asserts Eric Higgins, in his capacity as the Lakehurst Police Chief, "recommend(s) that [Lakehurst police officers] go out and give ticket(s)/summon(s) to [Plaintiff] in a effort to try and stop [Plaintiff] [from] com[ing] before the courts." (*Id.* at 8.) Plaintiff further claims Rodriguez, presumably on Eric Higgins's orders and fueled by his own racial animus, selectively enforced laws against Plaintiff, racially profiled Plaintiff, and wrongfully arrested Plaintiff. (*Id.* at 23-24.) In support of these claims, Plaintiff alleges:

> Defendant (Boro) Michael Rodriguez did not use the (MDT) unit in his Patrol car to so call "Random" check my lisence [sic] plates/tags on my car – the traffic stop was totally illegal – "Parts of/from the Pionous [sic] Tree" he was park at the traffic light(s) at Hall's Guilt gas station – whom owner is, Defendant James Davis sister man. Being that they (Boro) Police have been in a serie(s) of either giving [Plaintiff] – ticket(s)/summon(s) and/or putting their hand on their gun(s) with them – the rest of (Boro) White Race Police – how he is down with them.

. . . .

> Defendant Michael Rodriguez racial profile, selective enforcement, race discrimination did not use the MOBILE DATA UNIT/mobile data terminals (MDT's) to justify his stopping of [Plaintiff] to cover his lie of making random license plate check, there is no such thing as random when you know the person a Mayor candidate first Black and/or African/Native American to run for any (Boro) government position.

(*Id.* at 24-25.) Plaintiff also asserts Rodriguez never took the oath of office for his position as a Lakehurst police officer, and therefore cannot legally hold that position. (*Id.* at 28.)

Finally, Plaintiff asserts when he visited the Manchester police station to request protection from Lakehurst police officers, he experienced a medical crises and "had to beg the [Lakehurst] and Manchester . . . police for medical treatment/assistant at gun point to his head." (*Id.* at 25.) Unidentified Lakehurst police officers then allegedly arrested Plaintiff and placed him in the Ocean County Jail, where he was held for three (3) days without adequate treatment for his blood pressure or pain. (*Id.* at 6, 25.)

Based on these allegations, Plaintiff brings claims against Eric Higgins, Rodriguez, and Lakehurst under § 1983 for selective enforcement, in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment and false arrest, in violation of his rights under the Fourth Amendment. Plaintiff also asserts claims solely against Lakehurst under § 1983 for denial of medical care, in violation of the Eighth Amendment. For the reasons set forth below, these claims are dismissed without prejudice for failure to state a claim.

### 1. Vicarious Liability

Plaintiff brings § 1983 claims directly against Lakehurst for the actions of Lakehurst's employees. He also brings § 1983 claims against Eric Higgins and Rodriguez in both their official capacities as Lakehurst police officers and their individual capacities. A § 1983 claim against an

official in his official capacity represents merely another means by which an individual may bring a claim against the official's office and, in turn, the entity of which he is an agent. *Monell*, 436 U.S. at 690 n.55. Therefore, Plaintiff's claims against Higgins and Rodriguez in their official capacities are duplicative of his direct claims against Lakehurst. *See Miller*, 639 F. App'x at 832. A municipality, however, may not be held vicariously liable under § 1983 for the actions of its employees; instead, to be held liable, it must itself have direct or personal involvement in the alleged wrong. *See Iqbal*, 556 U.S. at 675-76; see also *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*"). To state a § 1983 claim against an official in his official capacity, or against the official's employing municipality directly, a plaintiff must generally identify a policy, ordinance, or practice of the municipality, which caused or resulted in the alleged constitutional violations. *See Humphries*, 562 U.S. at 35-36; *Monell*, 436 U.S. at 690-91; *Miller*, 639 F. App'x at 833.

Plaintiff has failed to allege Lakehurst has a policy, ordinance, or practice in place which caused or resulted in the alleged constitutional violations by Eric Higgins, Rodriguez, and other unidentified Lakehurst police officers. Without such pleadings, there is no basis to hold Lakehurst liable for the actions of its police officers. Therefore, Plaintiff's § 1983 claims against Lakehurst and against Eric Higgins and Rodriguez in their official capacities are dismissed without prejudice. *See Humphries*, 562 U.S. at 35-36 (2010); *Monell*, 436 U.S. at 690-91; *Miller*, 639 F. App'x at 833.

### 2. Selective Enforcement

The Equal Protection Clause of the Fourteenth Amendment "prohibits the 'selective enforcement' of a law based on an unjustifiable standard." *PG Publ. Co. v. Aichele*, 705 F.3d 91,

115 (3d Cir. 2013) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) and *United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979)). To establish a selective enforcement claim, a plaintiff must plead: "(1) that [he] was treated differently from other similarly situated [individuals], and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Aichele*, 705 F.3d at 115 (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010)) (quotations omitted).

Here, Plaintiff has failed to allege the first element of a selective enforcement claim-- that he was being treated differently from other similarly situated individuals. Plaintiff alleges Rodriguez and other Lakehurst police officers have been issuing traffic tickets to him (1) because of his race and (2) because of his plans to exercise his First Amendment right to access the court system. *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people peaceably to . . . petition the Government for a redress of grievances."); *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) ("The right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.") (marks omitted). However, Plaintiff does not allege Lakehurst police officers issued tickets to him more frequently than other drivers (non-minority or otherwise), who committed the same traffic violations. *See Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002) (Differential treatment may be demonstrated "by naming similarly situated members of an unprotected class who were not selected for the same search or, in some cases, by submitting statistical evidence of bias."). As such, Plaintiff has failed to allege that Rodriguez and other Lakehurst police officers were treating Plaintiff differently from other similarly situated individuals. Accordingly, these claims against Eric Higgins and Rodriguez are dismissed without prejudice.

### 3. False Arrest

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. *See Walmsley v. Philadelphia*, 872 F.2d 546 (3d Cir. 1989) (citing cases); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994) (holding § 1983 claim for false arrest is based upon the Fourth Amendment right to be free from unreasonable seizures). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: "(1) that there was an arrest" or seizure of an individual and "(2) that the arrest [or seizure] was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

"The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause to arrest exists when the facts and the circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Minatee v. Phila. Police Dep't*, 502 F. App'x 225, 228 (3d Cir. 2012) (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000)). Therefore, "[t]he arresting officer must only reasonably believe at the time of the arrest that an offense is being committed, a significantly lower burden than proving guilt at trial." *Minatee*, 502 F. App'x at 228 (citing *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005)).

Here, the alleged facts regarding Plaintiff's purported arrest are disjointed and confused. Plaintiff alleges he was arrested by Lakehurst police officers, but he does not allege the Lakehurst police officers lacked probable cause to arrest him. According to the Complaint, Plaintiff voluntarily travelled to the Manchester police station, where he was then arrested by Lakehurst police officers, not Manchester police officers, after experiencing some kind of medical crisis. It is unclear if Plaintiff was arrested pursuant to the July 20, 2013 warrant issued by Fisher, or for some other reason. These facts, even construed liberally, are silent as to whether the unidentified Lakehurst police officers who arrested Plaintiff had probable cause to arrest him. Moreover, Plaintiff does not allege either Rodriguez or Eric Higgins was directly involved in this arrest.

Additionally, insofar as Plaintiff seeks to bring claims arising from the traffic stop in which Rodriguez allegedly "did not use the MOBILE DATA UNIT/mobile data terminals (MDT's) to justify his stopping of [Plaintiff] to cover his lie of [a] making random license plate check," (ECF No. 1 at 24-25), Plaintiff has not alleged Rodriguez lacked probable cause to stop Plaintiff. Plaintiff pleads Rodriguez knew him and held a racial animus towards him. However, as the Supreme Court explained in *Whren v. United States*, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. at 813. "[A] plaintiff cannot base a false arrest claim on the arresting officer's alleged racial animus . . . ." *Stevens v. Way*, Civ. No. 15-7261 (FLW), 2016 U.S. Dist. LEXIS 67863, at *9 n.3 (D.N.J. May 24, 2016). Although Plaintiff alleges Rodriguez pulled him over due to his race and a personal vendetta against Plaintiff, he has failed to allege Rodriguez did not also have probable cause to stop him for a traffic violation or some other reason. Therefore, Plaintiff has failed to plead a necessary element of a false arrest claim arising from this incident.

Accordingly, Plaintiff's claims for false arrest against Rodriguez and Eric Higgins are dismissed without prejudice for failure to state a claim.[6]

### 4. Failure to Take the Oath of Office

Additionally, insofar as Plaintiff seeks to assert that any actions taken by Rodriguez are invalid, because he never took his oath of office as a Lakehurst police officer, this Court declines to exercise supplemental jurisdiction over these state law claims, pursuant to 28 U.S.C.S. § 1367(c).

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Recuse (ECF No. 48) is **DENIED**. Additionally, Moving Defendants' Motion to Dismiss (ECF Nos. 11, 26 to 36) are **GRANTED**. Plaintiff's claims against Moving Defendants are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. To the extent Plaintiff is able to supplement his Complaint with facts to overcome the pleading deficiencies outlined in this Opinion, he may file an Amended Complaint by March 28, 2017.

Date: February 27, 2017                          */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**

---

[6] Manchester Defendants and Lakehurst Defendants also argue Plaintiff's § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because "allowing this action to proceed would imply invalidity of" Plaintiff's guilty plea on December 4, 2015 to resisting arrest or eluding police and obstructing a criminal investigation. (ECF No. 11-1 at 7-8; ECF No. 26-1, 15-16; Cert. of Jerry J. Dasti, Esq. (ECF No. 11-2) at Ex. B.) However, the state of the pleadings is such that it is not entirely clear which of Plaintiff's claims relate to these criminal convictions. Therefore, the Court will not address this argument at this stage in the proceedings.